IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JERRY SHEPPARD, | ) | Civil Action No.: 4:07-cv-431-MBS-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | REPORT AND RECOMMENDATION |
| LUIS BERRIOS; JULIA BERRIOS; LISA | ) | |
| JUMP; AND OTTO HANSEN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Jerry Sheppard ("plaintiff/Sheppard"), filed this action under 42 U.S.C. § 1983[1]

on February 13, 2007. At all times relevant to the allegations in the plaintiff's complaint, he was an

inmate at the Federal Correctional Institution Bennettsville, South Carolina. Plaintiff alleges that his

constitutional rights were violated due to medical indifference. On June 26, 2007, defendants filed

a motion to dismiss or in the alternative a motion for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure  along with a memorandum and exhibits in support of that motion

(document #27).  Because the plaintiff is proceeding pro se, he was advised on or about June 28,

2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the district
judge.

the defendants' motion for summary judgment with additional evidence or counter affidavits could

result in dismissal of his complaint.  The plaintiff filed a response in opposition on July 30, 2007.


## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate

indifference to his medical needs. Specifically, plaintiff alleges that defendants refused to provide

him with proper fitting soft shoes and the improper fitting shoes caused him to fall down a flight of

stairs and injure his back, neck, and knees. Plaintiff also argues that defendants refused to provide

him with proper medical care for the injuries he sustained. Plaintiff requests compensatory damages

in the amount of $350,000.00 from each defendant1and punitive damages in the amount of

$500,000.00  from each defendant.

As stated above, defendants filed a motion for summary judgment asserting there was no

deliberate indifference to plaintiff's medical needs, qualified immunity, and failure to state a claim

upon which relief can be granted based on sovereign immunity.


### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to

fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v.

Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The

requirement of liberal construction does not mean that the court can ignore a clear failure in the

2

pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. <u>See</u> Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## C.  MEDICAL INDIFFERENCE

As previously discussed, plaintiff alleges that alleges that defendants forced him to wear improper fitting shoes which subjected him to cruel and unusual punishment because "the improper fitting shoes was [sic] the cause of my fall down a flight of stairs which resulted in injury to my back,

neck, knee and toe." (Response in opposition). Plaintiff alleges that he was in possession of a medically authorized soft shoe permit from FCI Edgefield upon his arrival at FCI Bennettsville due to feet problems. Plaintiff alleges he informed defendants upon his arrival at FCI Bennettsville on October 13, 2005, and gave the medical screening person the authorization . . . Plaintiff alleges that he was finally seen by defendant Julia Berrios on October 25, 2005, and December 9, 2005, and was denied a soft-shoe permit. Plaintiff contends that on January 9, 2006, he went to sick-call regarding his feet but was not permitted to see the medical doctor and was denied a soft-shoe permit. On January 11, 2006, plaintiff alleges he went to medical with pain in his feet and was again denied a permit and was not allowed to see the medical doctor. Plaintiff alleges that on February 24, 2006, he was seen by defendant Berrois who finally issued the permit for institutional soft shoes to be issued by the institutional laundry supervisor. Petitioner asserts that he reported to the institutional laundry supervisor who determined that no institutional soft-shoes were available to fit his feet. Plaintiff alleges that he normally wears a size 101/2 shoe in a "comfortable fit" but that the institutional soft-shoe was too large in a 101/2 size and that the size 10 was too small. Plaintiff asserts he was forced to wear the too large 101/2 shoe. On several occasions, plaintiff alleges that he addressed his need for proper fitting shoes or authorization to wear his "personal commissary purchased tennis shoes/sneakers" to defendants Berrios and Jump who denied his requests. Plaintiff alleges that in March 2006, he spoke with defendant Berrios, medical doctor at FCI Bennettsville, about his shoes being a safety hazard because he had tripped on the stairs due to the fact they were too large but was ignored. Plaintiff asserts that the Warden instructed him in the presence of the Associate Warden and Captain Bowling to have the medical doctor issue him the personal tennis shoes permit ad when he brought this to defendant Jump's attention, she told him to see sick call on

4

April 17, 2006. Plaintiff alleges that on April 15, 2006, the shoes got caught in the opening-space at the top of a flight of stairs and caused me to trip and slam down the flight of stairs, as witnessed by the C-4 Unit Officer, Mr. Bennett, and several inmates including inmate McCaskill, Tommy. I was helped off the stair landing and assisted down the stairs by inmate McCaskill and Officer Bennett who notified the compound officer who came and pushed me to Health Services in a wheelchair." (Response p. 18). Plaintiff asserts that he injured his back, left knee, neck and toe during the fall down the flight of stairs as a result of being forced to wear improper fitting shoes. Plaintiff alleges that he was not examined by the medical doctor until ten days after the fall wand was denied x-rays, MRI's and supportive braces. Plaintiff alleges that he has suffered physical and emotional injuries resulting from a violation of his Eighth Amendment right where plaintiff was forced to wear shoes that were too large and a "safety hazard." As a result, plaintiff alleges that he has been given knee braces by the medical staff at FCI Butner, where he is currently located, and has undergone physical therapy due to his injuries on April 15, 2006, resulting in "daily constant pain in his neck, back and left knee to this day."

Defendants state that all defendants are employed by FCI Bennettsville with Dr. Luis Berrios being the Clinical Director responsible for the health care delivered at the institution, Dr. Julia Berrios, medical officer responsible for providing professional care services to federal prisoners which includes physical examinations ordering testing, treatment and medications, Otto Hansen, Physicians Assistant which is responsible for the daily operation of the medial clinic, conducting sick call, prescribing treatment and medication for illnesses, and providing a wide range of emergency services, and Lisa Jump, Assistant Health Service Administrator, who is responsible for managing and directing the administrative activities of the health care professionals responsible for the

medical, dental, and allied health services of the facility.

Defendants first assert that this action is brought under <u>Bivens v. Six Unknown Named Agents fo the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) and the Federal Tort Claims Act. Defendants argue that plaintiff's allegations stem from assertions that defendants have a duty to provide him with proper and adequate medical care which stems from their employment, not from any personal obligation of the defendants. Thus, defendants assert that by naming the employees, he is actually bringing suit against the United States and that the doctrine of sovereign immunity shields the United States from suit absent its consent to be sued. As the United States has not consented to be sued, defendants argue the courts lack jurisdiction over plaintiff's claims against the defendant in their official capacities and the claims should be dismissed.

Suits against federal officials may not be brought under § 1983. <u>District of Columbia v. Carter</u>, 409 U.S. 418, 424-25 (1973). Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests. <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971); <u>see</u> <u>Radin v. United States</u>, 699 F.2d 681, 684 (4th Cir. 1983) (<u>Bivens</u> recognized an action against federal officers sued in individual capacities, but not against the United States). Plaintiff's <u>Bivens</u> action cannot lie against the United States nor against the individual defendants in their official capacities. *See* <u>United States v. Mitchell,</u> 463 U.S. 206, 212 (1983) (the United States cannot be sued without its express consent .); <u>Radin v. United States,</u> 699 F.2d 681, 685 (4th Cir.1983); <u>Keene Corp. v. United States,</u> 700 F.2d 836, 845 n. 13 (2d Cir.1983) (*Bivens* does not allow for recovery of money damages, or suits in general, against the government itself.). Thus, to the extent defendants are being sued under <u>Bivens</u> in their official capacities, the claims are barred by the doctrine of

6

sovereign immunity. Sovereign immunity does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. Gilbert v. Da Grossa, 756 F.2d 1455, 1459 (citing Davis v. Passman, 442 U.S. 228(1979); Bivens, supra. Thus, to the extent defendants are being sued in their individual capacities under Bivens, plaintiff's claims are not barred by the doctrine of sovereign immunity.

Defendants assert that plaintiff arrived at FCI Bennetsville on October 13, 2005, with the following documented medical problems: hypertension, degenerative joint disease, high cholesterol, gout, and glaucoma. From October 13, 2005, through February 23, 2006, plaintiff was monitored and treated with multiple joint pain and other maladies. (Declarations of Louis Berrios, Julia Berrios, Hansen, and plaintiff's medical records). Defendants assert that plaintiff was not a candidate for soft shoes at that time as FCI Bennettsville provides soft shoes to diabetic inmates with foot neuropathy and those with obvious foot deformities i.e. bunions, previous surgery or trauma. (Declarations of Luis Berrios, Julia Berrios, and Otto Hansen).  On February 24, 2006, defendants assert plaintiff was examined by defendant Julia Berrios for a complaint of rash on both feet and mild blistering. (Declaration of Julia Berrios and plaintiff's medical records p. 000010-000011 and 000037). Defendants assert that plaintiff was provided with the appropriate authorization to receive and wear institution issued soft shoes. Id. On April 14, 2006, plaintiff submitted an Inmate Request to Staff Member to the Health Services Department requesting he be permitted to wear his tennis shoes instead of the institution issued soft shoes. (Plaintiff's medical records p. 45).  Defendants contend plaintiff was instructed that this issue would be addressed during his next scheduled chronic Care Clinic appointment. Id. On April 15, 2006, defendants assert plaintiff experienced a fall on the stairs outside of his housing unit which he alleged was caused by improper fitting institution soft shoes.

Defendants state plaintiff was evaluated immediately after the injury by defendant Hansen and was found to have a contusion on his left knee and muscle strain to his right lower back area for which an anti-inflammatory medication was issued along with instructions to apply ice and moist heat to the injured areas. (Declarations of Julia Berrios, Luis Berrios, Hansen, and medical records p. 000012).

Defendants assert plaintiff was evaluated by defendant Jump on April 17, 2006, during sick call requesting a different pair of soft shoes and complained of chronic pain in his knees, back, and neck. Defendants assert plaintiff's gait was stable and there was no noted swelling in the knees. (Medical records 00013, and declaration of Lisa Jump). It is asserted that the pain medication previously prescribed was changed because plaintiff indicated it irritated his stomach and an appointment was scheduled with Dr. Luis Berrios to discuss the soft shoes. Id. On April 20, 2006, plaintiff was evaluated by defendant Hansen who noted the condition as unchanged. (Hansen declaration and medical records p. 000014). Dr. Hansen also noted that there were no urine stains in plaintiff's underwear which is important because a major symptom of evidence of damage to the spine is incontinence. Id. Plaintiff was instructed to follow-up with defendant Luis Berrios in one week and x-rays were ordered. (Id.).

Defendants assert that defendant Luis Berrios evaluated plaintiff on April 25, 2006, and diagnosed his condition as muscle strain, and instructed plaintiff to continue taking his anti-inflammatory medication and to continue with his range of motion exercises. (Declaration of Luis Berrios and plaintiff's medical records, p. 000015). Luis Berrios declares that plaintiff stated that the size 10 shoes were too small and the size 101/2 shoes were too large so he wanted permission to wear his tennis shoes. Defendant Luis Berrios noted there was no need for plaintiff to use his tennis

shoes at that time. (Declaration of Luis Berrios). Defendants assert that on or about May 15, 2006, result of the x-rays taken on April 20, 2006, were received and revealed plaintiff's spine, left knee, and left ankle were all normal. (Declaration of Luis Berrios, Julia Berrios, Hansen, and plaintiff's medical records p. 000029). On June 15, 2006, defendants assert plaintiff was evaluated by a contract orthopedic specialist ho measured plaintiff's feet and indicated the size 10 institution soft shoe was appropriate. (Plaintiff's medical records p. 30). Defendant Luis Berrios asserts he reviewed this information and concurred. (Berrios declaration). Defendants assert plaintiff had no further complaints while at FCI Bennettsville regarding his back, neck, and knees and even indicated to defendant Julia Berrios on July 24, 2006, that he was doing well with no complaints.(Declaration of Julia Berrios and plaintiff's medical records p. 18). Defendants state plaintiff was transferred to FCI Butner, North Carolina on October 27, 2006. (Declaration of Luis Berrios, Julia Berrios, and Hansen).

Defendants argue that all examinations and x-rays taken revealed the areas affected were normal and, based on these findings, there was no need for an MRI or braces, even though plaintiff insisted that he needed them. (Id.).

The undersigned finds that the plaintiff fails to show that defendant was deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical

> needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825

10

(1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v.

11

Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. Although plaintiff alleges in his complaint that upon entering FCI Bennettsville  he told an employee that he needed soft shoes and provided a permit upon his arrival, as noted from the declarations and plaintiff's medical records, he was examined on several occasions and provided a permit for the soft shoes even though he alleges they did not fit. Upon examination and measurement by an outside orthopaedic specialist, it was determined that the size 10 institutional soft shoe was the correct fit for plaintiff's feet. X-rays were preformed of the injured areas which results were normal.  As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury.  Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by this defendant "shocks the conscious" as required by Miltier v. Beorn, supra.  "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care

12

is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson,

supra. Any disagreement between an inmate and medical personnel fails to state a claim unless

exceptional circumstances are alleged . . . Although there is nothing to indicate that there were

mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to

judicial review in a § 1983 action.  Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the

overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be

granted in favor of defendants on this issue.


### E. QAULIFIED IMMUNITY

All of the defendants have argued that they are entitled to qualified immunity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard

which the court is to follow in determining whether the defendant is protected by this immunity.

That decision held that government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S.

at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official
> from liability for civil monetary damages if the
> officer's conduct does not violate clearly established
> statutory or constitutional rights of which a reasonable
> person would have known. In determining whether the
> specific right allegedly violated was 'clearly
> established,' the proper focus is not upon the right at

> its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir. 1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir. 1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to

14

appreciate that his conduct would violate" those rights. <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Collinson v. Gott</u>, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of <u>Swanson v. Powers</u>, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In <u>Maciariello v. Sumner</u>, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

<u>Maciariello</u>, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." <u>Maciariello</u>, <u>supra</u>. Therefore, the undersigned recommends that the motion for summary judgment

filed by the defendants be granted on the basis of qualified immunity.

## PLAINTIFF'S CLAIM UNDER THE FTCA

Plaintiff also alleges a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671 et. seq. Section 1346(b)(1) provides exclusive jurisdiction to hear actions against the United States for money damages for injury to or loss of property, or personal injury or death caused by a negligent wrongful act or omission of any federal employee while acting within the scope of his office or employment. Plaintiff is alleging the negligence of government employees caused him to suffer injury. Accordingly, this Court is the proper jurisdiction for this action.

In a claim pursuant to 28 U.S.C. § 1346(b)(1), the only proper party Defendant is the United States of America. Pursuant to 28 U.S.C. § 2679 suits against a federal agency on claims which are cognizable under 28 U.S.C. § 1346(b) are not authorized. By brief, the United States requests the individual Defendants be dismissed from this cause of action, and replaced with the United States of America as the Defendant. ( *See* Defendants' Brief [22] at pp. 20-21).

Next, the Defendant United States has by Brief also acknowledged that the Plaintiff has met the exhaustion requirement with respect to the FTCA claim. ( *See* Defendants' Brief [22] at p. 21). With respect to damages, 28 U.S.C. § 2675(b) provides: An action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

Plaintiff claimed personal injury damages in the amount of $250,000.00 when he submitted

16

his administrative tort claim to the Bureau of Prisons on September 8, 2005. ( *See* Exhibit 7 to Defendants' Brief ). Therefore, Plaintiff's recovery is limited to this amount. Plaintiff has not made any showing to this court that he has some "newly discovered evidence" or intervening facts" that would justify an award in excess of that claimed in his September 8, 2005, tort claim. Therefore, Plaintiff is not entitled to recover more than the amount presented to the federal agency, and Plaintiff's claim is limited to $250,000.00.

The United States cannot be sued without a waiver of its sovereign immunity. United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390, (1976). The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by governmental employees acting within the scope of their employment. *See* 28 U.S.C. 1346(b). Under the FTCA, a plaintiff may recover monetary awards from the United States for injury, property loss, or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope . . . of employment." 28 U.S.C. § 1346(b). The United States may be held liable only if the conduct complained of amounts to negligence "in accordance with the law of the place where the act or omission occurred." Id.

Under the Federal Tort Claim Act, federal courts are directed to base the Government's liability determination upon an analysis under state law. Accordingly, the claims relating to care provided by the Defendants at FCI  Bennettsville should be evaluated in accordance with South Carolina tort law. In South Carolina, "[t]o establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." Bloom v. Ravoira, 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000). "A determination of

17

negligence, standing alone, is a far cry from a determination of liability. Liability encompasses all elements of a negligence claim, including damages proximately caused by the alleged negligence." Hinds v. Elms, 358 S.C. 581, 585, 595 S.E.2d 855, 857 (Ct.App.2004).

In South Carolina, the burden of proof in a medical malpractice case is entirely upon the plaintiff. Dumont v. United States, 80 F.Supp.2d 576, 581 (D.S.C.2000). In Dumont, the court held that in order to establish liability in such a case, the plaintiff must prove the following by a preponderance of the evidence:

(a)    The recognized and generally accepted standards, practices, and procedures are in the community which would be exercised by competent physicians in the same speciality under similar circumstances;

(b)    that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;

(c)    that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and

(d)    that the plaintiff was injured.

The plaintiff must establish the standard of care, and the defendant's failure to conform to the required standard, by expert testimony, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct. Martasin v. Hilton Head Health System, L.P ., 613 S.E.2d 795, 364 S.C. 430 (S.C.App.2005) (internal citation omitted). "In addition to proving the defendant negligent, the plaintiff must also prove that the defendant's negligence was a proximate cause of the plaintiff's injury." Carver v. Med. Soc'y of S.C., 286 S.C. 347, 350, 334 S.E.2d 125, 127 (Ct.App.1985).

In the present case, the plaintiff has not shown the manner (if any) in which the defendants deviated from the standard of care. Furthermore, the plaintiff has not set forth any evidence, except

18

for his own bald allegations, that the defendants were negligent, and the plaintiff has failed to establish any causal link between the alleged negligence and the plaintiff's alleged injuries. In short, the plaintiff has utterly failed in his burden of proof.[2] Therefore, it is recommended that the defendants be granted summary judgment with respect to plaintiff's claim for negligence.

## III. CONCLUSION

Based on the reasons stated above, it is **RECOMMENDED** that the motion filed by the defendants for summary judgment (document #27) be **GRANTED IN ITS ENTIRETY** and that this matter be **DISMISSED** as no constitutional or statutory rights have been violated.

It is **FURTHER RECOMMENDED** that all outstanding motions be deemed **MOOT**.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 15, 2008
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[2] Lisa Jump was following the physician's medical opinion that plaintiff did not need a permit to wear his tennis shoes as opposed to the institutional soft shoe. Therefore, Jump did not breach any duty even if plaintiff could prove proximate cause under an ordinary negligence claim.